

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Christina O. Hud*  *401 Market Street, Fourth Floor*  *856-605-4910*
*Assistant U.S. Attorney*  *Camden, New Jersey 08101*

July 21, 2020

The Honorable Renée Marie Bumb, U.S.D.J.
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

    Re:   <u>United States v. Naheem Clark</u>, No. 20-cr-196 (RMB)

Dear Judge Bumb:

    Please accept this letter Response in Opposition to Motion for Early Termination of Supervised Release of defendant Naheem Clark ("the Defendant") in the above-captioned matter. For the reasons that follow, the Court should deny the Defendant's Motion.

**I.    BACKGROUND**

    On May 11, 2010, the Defendant pled guilty in the Southern District of New York to a criminal Information charging him with partaking in a drug trafficking conspiracy in violation of 21 U.S.C. § 846 and for unlawful possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). [<u>See</u> S.D.N.Y. Docket 09-cr-813, No. 29.] The Defendant was sentenced on August 19, 2011 to 40 months of imprisonment and ten years of supervised release. [<u>See</u> <u>id.</u>, No. 36.]

    Shortly after he was released from incarceration and while on supervised release, in March of 2013, the Defendant violated the terms of his supervised release by committing a state crime—the unlawful possession of narcotics. On September 19, 2014, the Defendant pled guilty to the Grade A violation of his supervised release in federal court, and was sentenced to a term of imprisonment of 46 months and a five-year term of supervised release. [<u>See</u> <u>id.</u>, No. 72.]

The Defendant was released from prison and began his new term of supervised release on April 14, 2016.[1] On February 25, 2020, jurisdiction over the Defendant's supervision was transferred to the District of New Jersey because the Defendant moved to this state. [*See* D.N.J. Docket 20-Cr-196, No. 1.] The Defendant filed the instant motion on May 28, 2020 seeking early termination of his supervised release term. [See id. at 3.]

## II. ARGUMENT

### A. The Court is Legally Precluded from Reducing the Defendant's Term of Supervised Release

As an initial matter, the Court is legally precluded from granting the Defendant's motion for early termination of his supervised release. The Defendant was convicted under 18 U.S.C. § 846 for conspiring to traffic crack cocaine in violation of 18 U.S.C. § 841(a)(1)(A). Section 841(a)(1)(A) provides, in pertinent part, that "*[n]otwithstanding section 3583 of title 18*, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of *at least 5 years* in addition to such term of imprisonment." (emphasis added).[2] Therefore, under § 841's plain language, this Court lacks authority under § 3583(e) to reduce the Defendant's term of supervised release to less than five years because that term is the mandatory minimum dictated by the statute. See United States v. Lafayette, 585 F.3d 435, 440 (D.C. Cir. 2009) (finding that district court lacked authority to reduce five-year term of supervised release mandated by 21 U.S.C. § 841(b)(1)(A)); United States v. Williams, 475 F.3d 468, 479 (2d Cir. 2007) (finding appeal moot because district court could not reduce mandatory term of supervised

---

[1] Upon a finding by a preponderance of the evidence that a defendant has violated the conditions of his supervised release by committing a Grade A violation, a district court may "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, . . . except that a person whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense for which the person was convicted was a Class A felony[.]" 18 U.S.C. § 3583(e)(3). The statute also permits a district court to add an additional term of supervised release following a prison term imposed under § 3583(e)(3), so long as the sum of the two terms does not exceed the originally-imposed term of supervised release. See Johnson v. United States, 529 U.S. 694, 705-06 (2000); United States v. Dillon, 725 F.3d 362, 366 (3d Cir. 2013). Here, upon revocation, the Court sentenced the Defendant to 60 months of supervised release. Per the United States Probation Office, the Defendant's term of supervised release will expire on April 13, 2021.

[2] As noted above, the Defendant was likewise convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Section 922(g) carries a term of supervised release up to three years. However, unlike § 841(a)(1)(A), the supervised release term is not mandatory under the statute.

release under § 841(b)(1)(C));[3] see also United States v. Damon, 933 F.3d 269, 273 (3d Cir. 2019) (acknowledging similar argument made by Government regarding requested early termination of supervised release and recognizing that § 841(b)(1)(A) requires a mandatory five-year term of supervised release).[4] Accordingly, since the Defendant has not yet served five years of supervised release, the Court cannot reduce his term of supervised release.

### B. The Defendant's Motion Fails on the Merits

Even if the Court had the authority to terminate the Defendant's supervised release, it nevertheless should decline to do so because the circumstances are not exceptional or extraordinary so as to warrant early termination.

#### 1. Legal Authority

Pursuant to 18 U.S.C. § 3583(e)(1), a court may terminate a term of supervised release early if, and only if, after considering specified factors under 18 U.S.C. § 3553(a), the court "is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). The specified factors are § 3553(a)(1), (a)(2)(B)-(D), (a)(4), (a)(5), (a)(6), and (a)(7).[5] United States

---

[3] Some courts have held that § 841's "notwithstanding" clause does not bar § 3583(e)(1) relief. See e.g., United States v. King, 551 F. Supp. 2d 1298, 1301 (D. Utah 2008); United States v. Scott, 362 F. Supp. 2d 982, 984 (N.D. Ill. 2005). According to those courts, "[o]nce the sentencing judge has imposed the sentence required by § 841, . . . [the sentencing judge] has fulfilled the mandate of that statute." Id. at 984. But by that logic, under § 3582(c)(2), a district court could use a retroactive amendment of the Guidelines to reduce a term of imprisonment below the mandatory minimum. That, of course, is not the law. See e.g., United States v. Brown, 574 F. App'x 176, 178 (3d Cir. 2014); United States v. Ushery, 558 F. App'x 269, 271 (3d Cir. 2014); United States v. Blewett, 746 F.3d 647, 657 (6th Cir. 2013). "Section 3582(c)(2) allows consideration only of retroactive amendments to the sentencing guidelines, with other sentencing elements—mandatory minimums included—held constant." Id. There is no reason to treat § 3583(e) differently.

[4] Damon held that an appellate waiver in a plea agreement bars a defendant's subsequent challenge to his sentence by seeking early termination of supervised release. See id. at 274; but cf. United States v. Cunningham, 292 F.3d 115, 117 (2d Cir. 2002) (finding that appellate waiver that does not specifically address supervised release does not constitute a waiver of right to appeal). The United States has attempted to the best of its ability to obtain a copy of the Defendant's plea agreement, but has been unable to do so. The plea agreement is not available on the docket, and inquiries made with the United States Probation Offices in the District of New Jersey and Southern District of New York, United States Attorney's Office in the Southern District of New York, and the Defendant's former defense counsel proved fruitless. In any event, given that appellate waivers are standard in plea agreements, to the extent the Defendant's plea agreement contained such a waiver, his instant Motion for early termination of his supervised release would likely be precluded under Damon.

[5] These factors are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D)

v. Laine, 404 F. App'x 571, 571 n.2 (3d Cir. 2010). However, although courts have discretion to terminate a term of supervised release, "early termination of supervised release under section 3583(e) should occur only when the sentencing judge is satisfied that something exceptional or extraordinary warrants it." Id. at 573-74 (citing United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997)).

### 2. In Considering the Sentencing Factors, the Defendant's Circumstances Are Not Exceptional or Extraordinary So As to Warrant Early Termination of Supervised Release

Here, the circumstances do not warrant an early termination of the Defendant's term of supervised release.

*First*, the history and characteristics of the Defendant and need for specific deterrence reflect that he is very much in need of continued supervision. Indeed, as discussed above, the Defendant has a history of violating the conditions of his supervised release and continuing to engage in illegal activity. Merely a few months after his supervised release began following his initial prison term for drug trafficking and firearms offenses in the Southern District of New York, the Defendant promptly violated the conditions of his supervised release when he engaged in illegal narcotics activity. This caused the court to revoke his supervised release and sentence him to a new term of incarceration and an additional term of supervised release. Since his release from his second term of incarceration, the Defendant has continued to engage in unlawful activity while on supervised release. Although in his motion the Defendant only admits to one positive drug test while on supervised release because he claims he attended a New Year's Eve party "where ambient smoke . . . put me into contact with marijuana," see Def. Br. at 16, Probation's records indicate he has had two positive drug tests while on supervision on January 18, 2017 and November 3, 2017. Thus, as the Supreme Court noted in Johnson: "[a] violation of the terms of supervised release tends to confirm the judgment that help was necessary, and if any prisoner might profit from . . . supervised release, no prisoner needs it more than one who has already tried liberty and failed. He is the problem case among problem cases[.]" Johnson v. United States, 529 U.S. 694, 709 (2000).

*Second*, the nature and circumstances of the offense, need to promote general deterrence and respect for the law, and the need to protect the public from future

---

to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . . (4) (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28 . . . (5) any pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

crimes of the Defendant likewise show that continued supervised release is in the interest of justice here.  The Defendant's underlying 2010 offenses for narcotics trafficking and unlawful firearm possession were serious crimes.  As reflected by the § 922(g) charge, the Defendant was already a convicted felon at the time he committed that offense—indeed, he was in Criminal History Category V at the time of his sentencing.  Further, the drugs he trafficked were "§ 841(b)(1)(A) weight"—the largest quantity of drugs under the statute.

Shortly after he was released from prison, the Defendant committed another narcotics offense and violated his conditions of supervised release.  The violation was serious—a Grade A violation—and caused the Court to revoke his supervised release and sentence him to another period of incarceration and the maximum term of supervised release permitted for the violation.  In rendering the sentence for the violation, the sentencing court noted the seriousness of the offense and highlighted the need for continued supervision, stating:

> I put you on supervised release in part for another reason, and that was I felt I had given you a substantial sentencing reduction given your criminal history record.  You were in category V . . . and you didn't get there without some effort on your part.  And I was concerned that by being lenient, I was not assessing the risk correctly of future violations of the law.  And I think what happened after you left prison has suggested to me strongly that I made the right judgment there by placing you on supervised release. So I'm going to place you on supervised release again. . . . The focus has to be "here I am today, where do I want to be tomorrow?"  And the only person who can make a change in that regard is you.  It is stunning to me that you got back involved in drugs so quickly—a deep disappointment.

See Exhibit A, 9/19/2014 Trans. 17:2-13, 24-25; 18:1-3.[6]  Given the Defendant's offense conduct in this case and his criminal history, it is hard to fathom how early termination would "provide 'adequate deterrence' and protection of the public from 'further crimes of the defendant[.]'"  United States v. Williams, 443 F.3d 35, 48 (2d Cir. 2006) (quoting § 3553(a)(2)(B),(C)).

*Third*, the Defendant has not met his burden of establishing that early termination is warranted by his conduct and in the interest of justice.  The Defendant cites to his stable employment, lack of recent transgressions while on supervision,

---

[6] For purposes of confidentiality, only the referenced pages of the sentencing transcript will be posted on the public docket.  However, a full copy of the transcript will be provided to the Court and the Defendant in conjunction with this letter.

and participation in clothes and food drives as a basis to terminate his supervised release early. See Def. Br. at 11-16.

The Third Circuit addressed a similar request for early termination of supervised release in United States v. Laine, 404 F. App'x 571 (3d Cir. 2010). In that case, the defendant sought early termination on the basis that "he had fully complied with the terms of his supervised release and there was no reason to further supervise him, . . . he had recently been ordained a priest, and he wanted to set up a monastery in fourteen western states with a mission to provide and care for children and women." Id. at 572. The Third Circuit affirmed the district court's denial of the request, holding that early termination is only warranted when "something exceptional or extraordinary warrants it" and that "[s]imple compliance with the conditions of supervised release are expected and not exceptional, and Laine's plan to open a monastery to serve victims of domestic violence, and to travel the United States and Canada to raise money and public awareness, does not mean that his continuation on supervised release for another year is a miscarriage of justice." Id. at 574.

Here, as in Laine, although the Defendant's recent compliance with the terms of his supervised release, charitable works, and continued employment are commendable, they are not exceptional or extraordinary circumstances warranting early termination of his supervised release. Indeed, this recent conduct is what is expected of someone on supervised release, and shows that continued supervision has positively benefitted him.

*Finally*, the United States Probation Office has advised that the Defendant has minimal reporting requirements at this stage of his supervision. Thus, the terms of his supervision are not burdensome or onerous and there is no reason why he cannot continue with his supervised release through 2021. See United States v. Olivieri, 72 F.Supp.3d 401, 403-04 (S.D.N.Y. 2014) (denying early termination of supervised release request for defendant who served 23 of 36 months of supervised release, partly because the defendant had minimal reporting requirements).

\* \* \*

### III. CONCLUSION

For the reasons set forth above, the Court should deny the Defendant's Motion for Early Termination of Supervised Release.

Respectfully Submitted,

CRAIG CARPENITO
UNITED STATES ATTORNEY

*/s/ Christina O. Hud*

_____
CHRISTINA O. HUD
Assistant U.S. Attorney
United States Attorney's Office
District of New Jersey

cc: Naheem Clark, Defendant (*via U.S. Mail*)
Kelly Maciel, U.S. Probation (*via email and ECF*)

# EXHIBIT A

```
E0JKCLAV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                              09 CR 813 (DLC)

NAHEEM CLARK,

              Defendant.

------------------------------x
                                         New York, N.Y.
                                         September 19, 2014
                                         4:00 p.m.

Before:

                    HON. DENISE COTE,

                                         District Judge


                        APPEARANCES


PREET BHARARA,
     United States Attorney for the
     Southern District of New York
AMANDA KRAMER
     Assistant United States Attorney

MARGARET SHALLEY
     Attorney for Defendant


ALSO PRESENT:  DONALD D. duBOULAY, CJA On Duty
```

1             Ultimately, I've been on some type of probation,
2    parole, supervised release, and, in other words, postconviction
3    monitoring since 1996, with a pattern that says it doesn't work
4    for me.  I have never been charged with or committed a violent
5    crime in my whole life, so, I'm not a real threat to society.
6    I'm not a drug addict or sex offender, so I don't need
7    counseling, NA or AA meetings as offered through supervised
8    release.
9             With all due respect, I'm not trying to give a black
10   eye to supervised release because a lot of people need it due
11   to the heinous and above the parameters of law crimes that they
12   committed.  I don't believe I fall into that category, your
13   Honor.
14            United States versus Dozier, the Third Circuit, the
15   Court of Appeals panel deemed supervised release a punishment
16   and a deprivation of some portion of one's liberty imposed as a
17   punitive measure for a bad act, which in my opinion for what
18   it's worth, I think it should be a helpful tool to transition
19   back into society for those that need it and which I feel I
20   don't need it.
21            Your Honor, I ask very, very respectfully that the
22   sentence you impose on me, I ask that you bring an end to
23   supervised release, conclude supervised release.  Thank you
24   very much, your Honor.
25            THE COURT:  Well, I think there's a clear question as

1    to whether supervised release can perform anything beneficial
2    in your life.  I think that's a serious question.  But I put
3    you on supervised release in part for another reason, and that
4    was I felt I had given you a substantial sentencing reduction
5    given your criminal history record.  You were in category V, I
6    believe -- let me just check.  Yes, category V and you didn't
7    get there without some effort on your part.  And I was
8    concerned that by being lenient, I was not assessing the risk
9    correctly of future violations of the law.  And I think what
10   happened after you left prison has suggested to me strongly
11   that I made the right judgment there by placing you on
12   supervised release.  So I'm going to place you on supervised
13   release again.

14           Now, Mr. Clark, I understand you think you should have
15   gotten a lighter sentence ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, but
16   I think focusing on those issues avoids the more fundamental
17   question which is the one you need to focus on, which is:  How
18   are you going to live your life?  Are you going back into the
19   drug business or not?

20           THE DEFENDANT:  No.

21           THE COURT:  So reviewing Third Circuit decisions and
22   trying to look at how the guidelines have changed or statutes
23   have placed certain drugs in one category or another is not, I
24   think, the appropriate focus here.  The focus has to be here I
25   am today, where do I want to be tomorrow?  And the only person

E0JKCLAV

1    who can make a change in that regard is you.
2             It is stunning to me that you got back involved in
3    drugs so quickly -- a deep disappointment.
4             Mr. Clark, please stand.
5             I impose a term of imprisonment of 46 months, to be
6    followed by a term of supervised release of five years, with
7    all of the conditions of supervised release previously imposed
8    upon you.
9             Counsel, is there any reason why I cannot impose that
10   sentence?
11            MS. KRAMER:  No, your Honor.
12            MS. SHALLEY:  No, your Honor.
13            THE COURT:  I impose the sentence I've described on
14   the record as stated.
15            You may be seated, Mr. Clark.
16            Is there an application with respect to the other
17   specifications?
18            MS. KRAMER:  Yes, your Honor.  The government moves to
19   dismiss the other specifications, aside from the narcotics
20   distribution specification.  Let me check the numbers.
21            THE COURT:  Number 1?
22            MS. KRAMER:  Yes.  Aside from number 1, your Honor,
23   the government moves to dismiss the remaining specifications.
24            THE COURT:  Your application is granted.
25            Mr. Clark, I need to advise you of your right to

E0JKCLAV

1  appeal.  If you are unable to pay the cost of an appeal you may
2  apply for leave to appeal in forma pauperis.  Any notice of
3  appeal must be filed within 14 days of the judgment of
4  conviction.
5          Thank you, Counsel.
6          MS. SHALLEY:  Thank you, your Honor.
7                  * * *